UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61067-RAR

**POLAR VORTEX, LLC**,

    Plaintiff,

v.

**CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY
YHL1700840**,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy YHL1700840's Motion to Dismiss Complaint, [ECF No. 4] ("Mot."). Defendant argues that Plaintiff Polar Vortex, LLC's Complaint should be dismissed in its entirety as time-barred, or, in the alternative, that Counts Three and Six of the Complaint and Plaintiff's request for attorney's fees should be dismissed for failing to state a claim upon which relief can be granted. *See* Mot. at 11. Plaintiff filed a Response to the Motion to Dismiss, [ECF No. 11] ("Resp."), and Defendant filed a Reply, [ECF No. 16], thereafter.[1] Having reviewed the briefs, the record, and applicable law, and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that Defendant's Motion is **GRANTED in PART** and **DENIED in PART** as set forth herein.

---

[1] The Court did not consider Plaintiff's Notice of Filing Supplemental Material in Support of the Opposition to Defendant's Motion to Dismiss Complaint, [ECF No. 26], since it relies on information that was unearthed during discovery. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The scope of the review [under Rule 12(b)(6)] must be limited to the four corners of the complaint.").

## BACKGROUND

Plaintiff is a limited liability company headquartered in the United States Virgin Islands that owns the "Polar Vortex"—a 57-foot Fontaine Pajot catamaran that bears Hull Identification Number FPA 54031G314 ("Yacht" or "Polar Vortex")—as well as four dinghies, one of which was the Polar Vortex's tender. Compl. ¶¶ 6–7. The Polar Vortex and its tenders were insured by Marine Yacht Insurance Policy No. YHL1700840 ("Policy") which was issued by Defendant and was effective from February 23, 2017, through February 23, 2018. *Id.* ¶¶ 8–9. The Policy valued the Polar Vortex at $1,000,000.00 and included $1,000,000.00 in "Hull & Machinery coverage" and $1,000,000.00 in "Protection & Indemnity coverage." *Id.* ¶¶ 9, 12.

On September 5, 2017, the Polar Vortex was docked at her berth at Compass Point Marina, located in St. Thomas in the U.S. Virgin Islands. *Id.* ¶ 18. Over the next two days, Hurricane Irma—one of the strongest hurricanes ever recorded in the Caribbean—struck St. Thomas and the rest of the Virgin Islands. *Id.* ¶ 19. The hurricane's forceful winds caused the Polar Vortex to "[break] loose from her mooring" and helplessly float through the marina until her ill-fated cruise was abruptly ended by a "piling" that "impaled" the ship. *Id.* ¶ 20. The piling created a hole "approximately six feet high and four feet wide" which flooded the Yacht's port hull and caused it to sink. *Id.* The Polar Vortex's tender was also damaged in the storm. *Id.* ¶ 21.

Once Plaintiff, the corporate owner of the Polar Vortex, learned of the Yacht's fate, it sprung into immediate action. Plaintiff "notified [Defendant] of the loss to the vessel and the tender of the vessel and the need to render emergency repairs." *Id.* ¶ 24. Plaintiff hired a salvaging company to try to mitigate any loss of the Yacht, but the salvage could not begin until September 10, 2017, five days after the start of the storm, due to the widespread damage caused by Hurricane Irma. *Id.* ¶ 27. The salvage itself was extraordinarily complicated and took over a week: the Polar Vortex's starboard cleats had all broken, a powerboat was "wedged between her and the dock,"

the salvors "encountered difficulties removing the piling from the interior of the Polar Vortex" since it was attached to a large steel bracket, and the "large dimensions of the hole" and its proximity to the Yacht's hull made sealing the hole and pumping the water out of the Polar Vortex "extremely challenging." *Id.* ¶¶ 28–38.

On September 27, 2017, several days after the Polar Vortex was raised from the sea, Defendant sent a surveyor, Will Howe, to St. Thomas to "handle the claim." *Id.* ¶¶ 43–44. Mr. Howe represented to Plaintiff that he would "survey the damages suffered by your vessel," "document and photograph the damages," and "prepare a damage report & an estimated cost of repairs for [Defendants]." *Id.* ¶ 46. Although Plaintiff alleges that Mr. Howe failed to "conduct a thorough survey of the Yacht" or even issue a "final or comprehensive damage report," it also contends that the damage to the Polar Vortex was so obvious that even this "cursory inspection" should have alerted Defendant to the fact that the Yacht was a "total loss." *Id.* ¶¶ 48, 50.[2] Nevertheless, Defendant "advised Plaintiff that the [Polar Vortex] was reparable and could be restored to its pre-loss condition" and that "it was Plaintiff's obligation to repair the [Polar Vortex] under the Policy[,]" even though Defendant had never been supplied with "a [final] damage report and estimated cost of repairs, with supporting documentation and photographs[.]" *Id.* ¶¶ 54, 65. Plaintiff ultimately arranged for the Polar Vortex to be transported from St. Thomas to the Lauderdale Marine Center in Fort Lauderdale, Florida, for repairs. *Id.* ¶ 68.

By January 25, 2018, Plaintiff had become "frustrated" with the lack of communication from Defendant and the mounting costs of repairs. *See id.* ¶¶ 74–79. That same day, Plaintiff's

---

[2] Plaintiff explains that Mr. Howe's preliminary damage report found that "the Port Engine room," "electrical room," "engine," "breaker panel[s]," and "wiring" were all completely submerged. Compl. ¶ 50. The preliminary damage report also purportedly concluded that the Polar Vortex's interior was "totally destroyed," that the Yacht was "[s]till leaking slowly," and that the Yacht's port hull had been ruptured "by a five foot by three and a half foot hole[.]" *Id.* ¶¶ 50–51.

General Counsel sent an email to Defendant's representatives which "manifested [Plaintiff's] belief that the vessel constituted a total loss" and requested that "the insurer treat the vessel as same under the Policy." *Id.* ¶¶ 79–82. Defendant "never directly responded" to this email and refused to declare the Polar Vortex a total loss, so the repairs continued. *Id.* ¶ 83. Plaintiff stopped repairs on the Polar Vortex in June 2019 after Plaintiff's expenditures totaled $1,241,894.47— which comprised $1,091,228.81 Plaintiff spent on repairs and an additional $150,665.66 spent to salvage the Polar Vortex and transport it to Fort Lauderdale. *Id.* ¶ 104. On June 17, 2019, Plaintiff "submitted a formal Notice of Tender of Abandonment and Sworn Proof of Loss" which Defendant rejected. *Id.* ¶ 108. This rejection was later confirmed in a "communication from [Defendant's] counsel." *Id.* ¶ 111. Defendant now purportedly concedes that "the Yacht is a constructive total loss, but accept[s] no responsibility for its failure to declare the Yacht a constructive total loss in a timely manner or failure to provide guidance to the insured as promised." *Id.* ¶ 119.

Plaintiff originally filed a complaint against Defendant in this Court on September 29, 2020, alleging that Defendant had committed several material breaches related to the Policy. *See* Complaint, *Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-61978 (S.D. Fla. Sept. 29, 2020), [ECF No. 1]. The parties subsequently agreed to dismiss the case "without prejudice to re-filing by the Plaintiff at a later date." Stipulation of Voluntary Dismissal, *Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-61978 (S.D. Fla. Dec. 7, 2021), [ECF No. 39]. The instant Complaint alleges six counts against Defendant: Breach of Contract for Failure to Accept Tender of the Vessel (Count One), Compl. ¶¶ 124–38; Negligent Failure to Adjust the Claim for the Polar Vortex (Count Two), *id.* ¶¶ 139–51; Negligent Failure to Adjust the Claim for the Tender (Count Three), *id.* ¶¶ 152–64; Breach of Duty of Utmost Good Faith and Fair

Dealing (Count Four), *id.* ¶¶ 165–82; Misrepresentation (Count Five), *id.* ¶¶ 183–99; and Common Law Bad Faith (Count Six), *id.* ¶¶ 200–17.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted); *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). This includes attachments or exhibits provided with the complaint. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (citing FED. R. CIV. P. 10(c))). A court may also "consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," meaning the authenticity of the document is not challenged. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Further, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's

contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document provided it meets the centrality requirement[.]" *Id.*

## ANALYSIS

### A. Choice of Law Analysis

To begin, the Court must wade into the often-treacherous waters of "choice of law." In this case, the Policy itself contains a "choice of law" provision that reads as follows:

> **CHOICE OF LAW JURISDICTION:**
>
> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

Policy, [ECF No. 16-1], at 6.[3] Both parties agree that, as a starting point, this Court should apply "well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice[.]" Mot. at 8; *see also* Resp. at 6 ("[Plaintiff] asserts that entrenched maritime principles apply[.]"). However, the parties disagree as to what law to apply when there is no applicable admiralty law. Defendants ask the Court to apply the Policy's choice of law provision, which mandates the application of substantive New York law when there is no applicable admiralty law. Mot. at 8. Plaintiff argues that instead of applying New York law as provided for in the Policy, the Court should apply the law of the U.S. Virgin Islands. Mot. at 6.

---

[3] The Court may consider the terms of the Policy even though it is not attached to the Complaint. In general, "matters outside the pleadings" should not be considered at the motion to dismiss stage unless the Court converts the motion to dismiss into a motion for summary judgment and gives the parties a "reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, the Court may consider "a document attached to a motion to dismiss . . . without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley*, 304 F.3d at 1134. Neither party disputes the authenticity of the Policy, and the central allegation in Plaintiff's Complaint is that Defendant *breached the Policy*; in fact, Plaintiff liberally cites from the Policy throughout its Complaint. *See generally* Compl.

Plaintiff argues that the law of the U.S. Virgin Islands—where the contract was entered into and where the Yacht was located—prohibits the enforcement of choice of law clauses that require the contract be construed according to the laws of any other state. Mot. at 5–6 (citing V.I. Code tit. 22, § 820(a)(1)).

The Court finds that the Policy's choice of law provision, mandating the application of New York law in the absence of relevant admiralty law, is enforceable. To reach this conclusion, the Court applies admiralty law—not the law of the U.S. Virgin Islands—to interpret the enforceability of the Policy's choice of law provision. The Court does so because "[m]arine insurance contracts qualify as maritime contracts, which fall within the admiralty jurisdiction of the federal courts and are governed by maritime law." *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019).

Next, the Court must determine, under admiralty law, whether the Policy's choice of law provision is enforceable. The federal admiralty choice of law rules provide that a federal district court should apply "a choice of law provision in a marine insurance policy . . . unless the state in question has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law." *Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1261 n.7 (S.D. Fla. 2021); *see also Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1354 (11th Cir. 2022) ("We see no reason to depart from our sister circuits by declining to enforce the parties' choice-of-law agreement in this case."). Put another way, "a choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225, 230 (3d Cir. 2022) (alteration accepted) (quoting 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 19:6 (6th ed. 2020)); *accord Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010).

Here, Plaintiff has failed to show, or even allege, that New York "has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law." *Rosin*, 757 F. Supp. 2d at 1251 (quoting *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)); *see also, e.g.*, *Great Lakes Ins. SE v. Lassiter*, No. 21-21452, 2022 WL 1288741, at *6–7 (S.D. Fla. Apr. 29, 2022) (rejecting arguments that New York had no "substantial relationship" to the contract and that the choice of law clause was "unreasonable or unjust"). Both parties acknowledge that the U.S. Virgin Islands is where the contract was entered into and the Yacht was located. But that is not enough to reject the application of New York law. Defendant correctly points out that maritime insurance contracts with the same (or nearly identical) choice of law provisions have been routinely upheld by this Court. *See Rosin*, 757 F. Supp. 2d at 1250–51; *Sunset Watersports*, 570 F. Supp. 3d at 1261 n.7; *Lassister*, 2022 WL 1288741, at *5–6. Absent any evidence that applying New York law would be "unreasonable or unjust," the Court has no reason to decline to enforce the choice of law clause. Accordingly, the Court finds that, where federal admiralty law does not apply, the Court must apply the substantive law of New York.

B. **The Complaint is not Time-Barred**

Turning to Defendant's substantive arguments, Defendant first contends that Plaintiff's Complaint is time-barred. Defendant posits that this entire suit must be dismissed since "[t]he date of loss was September 5–6, 2017, and all of the purported breaches alleged throughout the Complaint occurred well-over a year before September 29, 2020, when this case was first filed[.]" Mot. at 6.[4] This premise is based upon the text of the Policy itself, which states:

---

[4] The parties agree that the Complaint relates back to the original complaint that was filed in Case No. 20-61978 on September 29, 2020. *See* FED. R. CIV. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.").

### TIME FOR SUIT AGAINST THE INSURERS

> No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Policy is issued, then, and in that event, no suit or action under this Policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.

Policy, [ECF No. 16-1], at 11. Plaintiff responds that the "continuing violations doctrine" tolled this provision of the Policy until Defendant's most recent "violation"—which occurred less than a year before Plaintiff filed suit. Resp. at 5–6. The Court agrees with Plaintiff.

To answer this question, the Court must first ascertain the applicable law. According to the choice of law clause in the Policy, the Court first looks to whether there is "well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice." Policy, [ECF No. 16-1], at 6; *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1169 (11th Cir. 2021) (requiring the application of "entrenched federal maritime rules" before applying state law). Finding no entrenched federal maritime rule applicable here, the Policy is thus "subject to the substantive laws of the State of New York." Policy, [ECF No. 16-1], at 6.

Under New York law, "the 'continuing violation' doctrine . . . is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (N.Y. App. Div. 1998). Importantly, however, "the doctrine is predicated on continuing wrongful acts and not on the continuing effects of earlier wrongful conduct." *Affordable Hous. Assocs., Inc. v. Town of Brookhaven*, 13 N.Y.S.3d 876, 879 (N.Y. Sup. Ct. 2015); *see also, e.g., Commack Self-Service Kosher Meats, Inc. v. State*, 704 N.Y.S.2d 737, 739 (N.Y. App. Div. 2000) ("Thus,

the mere fact that claimants may continue to suffer damage to their reputation does not alter the fact that the Department's unlawful conduct, if any, occurred five years before the claim was filed.").

According to Plaintiff, the most recent "unlawful acts" perpetrated by Defendant were "an August 17, 2020, renewed tender of abandonment of the vessel" and "an August 26, 2020, confirmation of declination of abandonment of the vessel[.]" Resp. at 9; *see generally Rock Trans. Props. Corp. v. Hartford Fire Ins. Co.*, 312 F. Supp. 341, 347 (S.D.N.Y. 1970) ("An insured claiming a constructive total loss must usually abandon or tender abandonment to the insurer of whatever remains of the insured property."). Defendant insists that the most recent "wrongful act" Plaintiff can rely on "was Defendant's rejection of Plaintiff's formal tender of abandonment of the vessel on June 17, 2019"—a date which is more than a year before Plaintiff's initial complaint was filed on September 29, 2020. Reply at 3–4. The central question, therefore, is whether Defendant's August 17, 2020 and/or August 26, 2020 decisions to *again* reject Plaintiff's tender of abandonment constitute new wrongful acts or whether they were the mere continuation of Defendant's initial rejection of the Plaintiff's Notice of Tender of Abandonment on June 17, 2019.

Construing all facts in the light most favorable to Plaintiff, the Court finds that the August 17, 2020 and August 26, 2020 rejections were new wrongful acts since Plaintiff alleges that the rejection (and confirmation of rejection) of the Notice of Tender of Abandonment were a breach of the Policy. *See* Compl. ¶¶ 108–12.[5] The law is clear that each new breach of a contract constitutes a new wrongful act that can toll the limitations period under the continuing violation doctrine. *See Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121–22 (2d Cir. 2020) ("Under that

---

[5] Whether Defendant actually breached the Policy is a question of fact; therefore, at this stage of the proceedings, the Court must accept Plaintiff's allegations that a breach occurred as true. *See U.S. for Use of N. Maltese & Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985) ("It is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact.").

doctrine, 'where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously.'") (quoting *Stalis v. Sugar Creek Stores, Inc.*, 744 N.Y.S.2d 586, 587 (N.Y. App. Div. 2002)); *Palmeri v. Willkie Farr & Gallagher LLP*, 69 N.Y.S.3d 267, 271–72 (N.Y. App. Div. 2017) ("Here, plaintiff alleges not only that defendant breached its fiduciary duty when it terminated its professional relationship with him, but also when, until at least June 2011, it acted in a manner directly adverse to his interests."). Since Plaintiff alleges that Defendant breached the Policy less than a year before it filed suit, the Court concludes that the action is not time-barred by the terms of the Policy itself.[6]

### C. Count Three is Dismissed *Without Prejudice*

Moving to Count Three of the Complaint, Defendant maintains that Count Three "fails to allege sufficient facts or requisite elements to state a cause of action for breach of contract for failure to pay the tender (*i.e.*, small boat) claim. Nowhere in the Complaint does Plaintiff allege that it made a claim for damage to the tender under the subject policy." Mot. at 7.[7] Plaintiff counters that Count Three is a negligence claim, not a breach of contract claim, and that Count Three meets the appropriate federal pleading standards. *See* Resp. at 14–15.

Both of Plaintiff's arguments are unpersuasive. To begin, the Court concurs with Defendant that Count Three is—at its core—a breach of contract claim. The Court again applies New York law, which provides that a contract does not create a duty (for negligence purposes) between the contracting parties unless that duty existed separately from the contract's formation. *See 320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, 149 N.Y.S.3d 28, 29–30 (N.Y. App. Div.

---

[6] Because Plaintiff's suit is timely under the terms of the Policy, the Court declines to decide whether the Policy's one-year limitations period is enforceable under New York law.

[7] Defendant's Motion erroneously refers to Count Two of the Complaint rather than Count Three, but this is an obvious scrivener's error given the content of Plaintiff's argument. *See* Mot. at 7; *see also* Reply at 4 (confirming the scrivener's error).

2021) ("The claim for negligence was also properly dismissed. It is well settled that, absent allegations of a breach of duty independent of the contract, causes of action 'based on negligent or grossly negligent performance of a contract are not cognizable.'" (quoting *Pacnet Network Ltd. V. KDDI Corp.*, 912 N.Y.S.2d 178, 180 (N.Y. App. Div. 2010))). Plaintiff itself recognizes that Defendant's alleged negligence is the result of its breach of the Policy; thus, Count Three must be properly construed as a breach of contract claim. *See* Compl. ¶ 164 ("As a result of the breach of contract by Defendant, Plaintiff has suffered damages and continues to suffer damages[.]").

Next, the Complaint's allegations are insufficient to sustain a breach of contract claim. In New York, the elements of breach of contract are "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citations omitted). The Complaint provides no details about what Plaintiff's obligations under the Policy *vis a vis* the tender were, nor does it explain how Plaintiff "performed in accordance with the contract." *See* Compl. ¶¶ 152–64. The Court also notes that, although the Complaint provides extensive details about the damage to the Polar Vortex and the communications between the parties about the Polar Vortex, there is comparatively little information about the tender. It is Plaintiff's responsibility to provide factual allegations which "raise the right to relief above the speculative level" and contain more than mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Since Count Three's deficiencies are remediable, and mindful of the Eleventh Circuit's command that "leave to amend shall be freely given when justice so requires," *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1286–87 (11th Cir. 2003) (alteration accepted) (citation and internal quotation marks omitted), the Court will **DISMISS** Count Three ***without prejudice*** and allow Plaintiff to file an amended complaint that repleads Count Three properly.

### D. Count Six is Dismissed *With Prejudice*

Count Six of the Complaint alleges that Defendant engaged in "common law bad faith" when it failed "to advise the insured as to the fact that the vessel was in all likelihood a total constructive loss" and that the bad faith "continued and was compounded" by Defendant's persistent failure to declare the Polar Vortex a total loss. Compl. ¶¶ 202–05. Defendant's argument is simple: "New York law does not recognize a cause of action for bad faith arising out of the alleged breach of an insurance contract." Mot. at 8.[8] This is correct. New York cases are legion that "there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy[.]" *Cont'l Cas. Co. v. Nationwide Indem. Co.*, 792 N.Y.S.2d 434, 435 (N.Y. App. Div. 2005); *see also Acquista v. N.Y. Life Ins. Co.*, 730 N.Y.S.2d 272, 278 (N.Y. App. Div. 2001) ("We are unwilling to adopt the widely-accepted tort cause of action for 'bad faith' in the context of a first-party claim. . . . [T]he duties and obligations of the parties to an insurance policy are contractual rather than fiduciary." (cleaned up)).

The New York Court of Appeals has recognized a limited exception to this rule where "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" *Panasia Estates, Inc. v. Hudson Ins. Co.*, 886 N.E.2d 135, 137 (N.Y. 2008) (quoting *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 130 (N.Y. 2008)). But Defendant correctly argues that this exception does not apply in the instant case because "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a

---

[8] There are no applicable provisions of federal maritime law which govern bad faith claims related to a maritime insurance contract. *See, e.g.*, *Brown v. Yaring's of Tex., Inc.*, __ F. Supp. 3d ___, 2022 WL 17404888, at *21 (S.D. Ala. Dec. 1, 2022) (applying Alabama state law to adjudicate a "bad faith refusal to pay an insurance claim").

breach of contract claim, based on the same facts, is also pled, nor does it recognize an independent cause of action for bad faith denial of insurance coverage." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010) (cleaned up); *see also Orient Overseas Assocs. v. XL Ins. Am., Inc.*, 18 N.Y.S.3d 381, 384 (N.Y. App. Div. 2015) ("[P]laintiff is complaining that Westport, in bad faith, has not performed their agreement in accordance with Plaintiff's understanding of it. Thus, the [bad faith] cause of action is in fact a contract claim and is duplicative of the fourth cause of action, which alleges breach of contract against Westport."). Plaintiff's only counterargument is that "common law bad faith insurance claims" are recognized under U.S. Virgin Islands law. Resp. at 16. But as previously discussed, the law of the U.S. Virgin Islands does not govern this action.

Plaintiff's bad faith claim is based on the same facts as its breach of contract allegation—*i.e.*, that Defendant wrongly refused to declare the Polar Vortex to be "a constructive total loss which could not be returned to its pre loss condition[.]" Compl. ¶ 181. New York law does not allow Plaintiff to allege both a contractual breach and bad faith on the part of the breaching party. Accordingly, Count Six of the Complaint is **DISMISSED** *with prejudice*.

### E. Plaintiff's Request for Attorney's Fees is Dismissed *Without Prejudice*

The final issue raised in Defendant's Motion to Dismiss is Plaintiff's entitlement to attorney's fees. Defendant argues that neither federal admiralty law nor New York law allows Plaintiff to recover attorney's fees in a dispute over a maritime insurance contract. *See* Mot. at 9–10. Defendant also avers Plaintiff is precluded from raising the issue of attorney's fees since Judge Rodney Smith already found that Plaintiff was not entitled to attorney's fees in the original federal case between the parties. *See* Reply at 5. Plaintiff insists that it is entitled to fees under federal admiralty law since the Complaint alleges that Defendant "acted in bad faith." Resp. at 17 (citing *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001)).

As Defendant alleges, the issue of attorney's fees has already been fully litigated. In an order granting in part Defendant's motion to dismiss, Judge Smith found that Plaintiff was not entitled to pursue attorney's fees:

> Defendant contends that there is no general maritime law rule for the provision of attorney's fees in marine insurance cases; therefore, New York law, as set out in the Policy's choice of law provision, applies. According to Defendant, New York law does not allow an insured to recover its attorney's fees from its insurer in a successful suit for coverage. Plaintiff responds that maritime law does address attorney's fees.
>
> Plaintiff relies on *Natco Limited Partnership v. Moran Towing of Florida, Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001), for the proposition that "Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." Plaintiff states in its response that it has included attorney's fees in its prayer for relief to preserve its right to seek fees should the Court find bad faith. However, as Defendant points out, Plaintiff's Amended Complaint does not allege any facts giving rise to bad faith. Thus, Plaintiff's Amended Complaint has failed to allege an entitlement to attorney's fees and Plaintiff's demand for such is dismissed.

*Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-61978, 2021 WL 8895171, at *5 (S.D. Fla. Sept. 29, 2021). The doctrine of collateral estoppel "precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). Collateral estoppel applies when: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue [was] 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted [had] a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* "For purposes of issue preclusion . . . [a] 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Christo

*v. Padgett*, 223 F.3d 1324, 1339 n.47 (11th Cir. 2000) (quoting Restatement (Second) Judgments § 13 (1980)).

Needless to say, Judge Smith's prior order—which concerned the same parties and the same causes of action as the instant case—is entitled to preclusive effect. *See, e.g.*, *Irvin v. United States*, 335 F. App'x 821, 825 (11th Cir. 2009) (holding that "the district court's dismissal" of an earlier complaint "without prejudice" was sufficiently firm for collateral estoppel purposes); *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1539 (M.D. Fla. 1989) (applying collateral estoppel to previous order denying motion for summary judgment). Moreover, even if collateral estoppel did not apply, the Court would reaffirm and readopt Judge Smith's position. Attorney's fees are only available to Plaintiff in a maritime action if "they are provided by the statute," "the nonprevailing party acted in bad faith in the course of the litigation," or "there is a contract providing for the indemnification of attorneys' fees." *Natco*, 267 F.3d at 1193.

Here, both parties concede that there is no mandatory award of attorney's fees under a statute nor does the Policy contemplate attorney's fees. *See* Mot. at 9–10; Resp. at 17.[9] Accordingly, the demand for attorneys' fees at this time is denied.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, [ECF No. 4], is **GRANTED in PART** and **DENIED in PART**.

2. Count Six of the Complaint is **DISMISSED *with prejudice***.

---

[9] Plaintiff has not alleged that Defendant acted in bad faith during the course of litigation. If Plaintiff moves post-judgment for attorney's fees on that basis, the Court will consider the motion at that time. *See* FED. R. CIV. P. 54(d)(2)(B) ("Unless a statute or a court order provides otherwise, the [motion for attorney's fees] must be filed no later than 14 days after the entry of judgment.").

3. Count Three of the Complaint and Plaintiff's demand for attorney's fees are **DISMISSED** *without prejudice*.

4. Plaintiff may file an amended complaint within **ten (10) days** of the date of this Order.

5. The Motion to Dismiss is **DENIED** in all other respects.

**DONE AND ORDERED** in Miami, Florida, this 14th day of February, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**